IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LEROY ALLEN FOSTER and | ) | |
| MARY KATHLEEN FOSTER | ) | Case No. 04-21326-drd |
| | ) | |
| Debtors. | ) | |
| | ) | |

MEMORANDUM OPINION

The matter before the Court in this Chapter 7 case is the motion by debtors Leroy Allen Foster and Mary Kathleen Foster ("Debtors") to dismiss their case and the objection to that motion filed by Harold Woodward ("Woodward"), one of the Debtors' principal creditors. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(A). This Memorandum Opinion contains my findings of facts and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to this matter by Rules 9014(c) and 7052 of the Federal Rules of Bankruptcy Procedure. For all the reasons discussed, the Court sustains the objection and denies the motion to dismiss.

I. FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed this Chapter 7 proceeding on May 27, 2004. On September 8, 2004, they filed a Motion to Dismiss ("Motion") in which they alleged as grounds for the request for dismissal that they "may have found another means to satisfy creditors." Motion, ¶ 2. Woodward, who holds both secured and unsecured claims against the Debtors, objected and the Court scheduled a hearing on the Motion. At the hearing, debtor Leroy Allen Foster testified that he had secured a loan commitment for an amount sufficient to pay all the Debtors' creditors in full. On cross-examination by Woodward's

counsel, the loan commitment was introduced into evidence and other details of the transaction emerged. That evidence paints a somewhat different picture than the one represented by Mr. Foster. As it turns out, the commitment is not to one or both of the Debtors, but to an entity by the name of Golf Hills Development, L.L.C. ("Golf Hills"), a limited liability company of which Debtor Leroy Foster is one of three members. Golf Hills was formed on August 20, 2004, approximately three months after the filing of the petition. According to Mr. Foster, it owns no assets. The loan commitment, dated October 11, 2004, in the amount of $4.8 million, was issued by Amstar Mortgage Corporation ("Amstar"), not to Mr. and Mrs. Foster, but to Golf Hills and a Richard and Janet Sampson. The Sampsons are apparently accommodation parties and are on the loan because they, unlike Golf Hills, are creditworthy.

According to the testimony, the proceeds of the loan are to be used in part to purchase property in Arkansas owned by a Randy Jackson. That purchase will exhaust one-half of the $4.8 million loan commitment. The balance is to be used to either purchase or refinance (the evidence is not clear) certain other properties owned either by Debtor Leroy Foster or jointly by him and Woodward. Those other properties, along with associated indebtedness which they secure are listed on Schedule D of the Schedules of Assets and Liabilities. Lot 36 is subject to a lien in the amount of approximately $650,000. Lots 55 and 56 are encumbered by approximately $500,000 in debt. Lot 86, the final property in which the estate has an interest which would be affected by the proposed transaction, is subject to a lien of approximately $158,000. The liens on these three properties aggregate

approximately $1.3 million.[1] Debtors list unsecured debts of $2.6 million.

Apparently, at the first meeting of creditors, certain questions were raised regarding the completeness of the Schedules and the Statement of Financial Affairs. The trustee requested that certain additional information be supplied and amendments made and scheduled a Rule 2004 examination of Debtor Leroy Foster for September 9, 2004 in order to obtain some of this additional information. The day before the scheduled Rule 2004 examination, however, Debtors filed the Motion.

## II. DISCUSSION AND ANALYSIS

The decision whether to grant a motion to dismiss a Chapter 7 proceeding lies within the discretion of the bankruptcy court. *Maixner v. Surratt-States (In re Maixner)*, 288 B.R. 815, 817 (8th Cir. B.A.P. 2003); *Turpen v. Eide (In re Turpen)*, 244 B.R. 431, 433 (8th Cir. B.A.P. 2000). Section 707(a) of the Bankruptcy Code provides that a court may dismiss a case under Chapter 7 after notice and hearing "for cause." 11 U.S.C. § 707(a). While the section does not expressly refer to voluntary dismissals, the courts have held that it is applicable to such requests as well as to requests filed by creditors. *Maixner*, 288 B.R. at 817; *Turpen*, 244 B.R. at 434. The debtor thus has no absolute right to dismiss a Chapter 7 proceeding and must demonstrate cause for dismissal. *Maixner*, 288 B.R. at 817; *Turpen*, 244 B.R. at 434; *In re Wilde*, 160 B.R. 625, 627 (Bankr. W.D. Mo. 1993). Even if cause is shown, however, the court may deny the motion if creditors may be prejudiced

---

[1]In addition to the listed claims, the Schedules of Assets and Liabilities seem to indicate that the Bank of Versailles also holds a lien on lots 55 and 56 to secure a claim just in excess of $300,000. If this is correct, the total indebtedness secured by these lots is closer to $1.6 million. The discrepancy, however, does not affect the Court's analysis of the Motion.

by dismissal of the case. *Maixner*, 288 B.R. at 817; *Turpen*, 244 B.R. at 434.

In determining whether to grant such a motion, the courts have generally looked at the following factors: (1) whether all of the creditors have consented; (2) whether the debtor is acting in good faith; (3) whether dismissal would result in a prejudicial delay in payments; (4) whether dismissal would result in a reordering of priorities; (5) whether there is another proceeding through which the payment of claims can be handled; and (6) whether an objection to discharge, an objection to exemptions or a preference claim is pending. *Maixner*, 288 B.R. at 817; *Turpen*, 244 B.R. at 434.

In this case, Debtors seek to dismiss because they claim to have the ability and intent to pay their creditors outside the context of the bankruptcy case with the assistance of the loan commitment introduced into evidence. There are several problems, however, with this position. First, the ability of a debtor to pay his debts does not constitute cause for dismissal. *Turpen*, 288 B.R. at 434; *In re Williams*, 15 B.R. 655, 657 (E.D. Mo. 1981) (citing H.R. Rep. No. 95-595 at 380 (1977), U.S. Code Cong. & Admin. News 5963, 6336; S. Rep. No. 95-989 at 94 (1978), U.S. Code Cong. & Admin. News 5787, 5880); *Kirby v. Spatz (In re Spatz)*, 221 B.R. 992, 994 (Bankr. M.D. Fla. 1998) ("it is well established and supported by legislative history that the fact that a debtor is willing and able to pay his debts outside of bankruptcy does not constitute adequate cause for dismissal under Section 707(a).") Second, and illustrating the reason for the rule, there is no assurance that the proceeds of the loan commitment will be used for the benefit of the Debtors' creditors. To begin with, it is not at all clear that any of the transactions which might be funded by the loan proceeds are certain to occur. For example, there was no evidence that contracts are negotiated and in place with respect to the properties, the purchases of which are to be funded by the loan proceeds. Moreover, there is no

assurance that the proceeds of the loan commitment will be used as Debtor Leroy Foster represented. Neither of the Debtors has any rights under the loan commitment; it runs to a limited liability company of which Debtor Leroy Foster is a member and to two unaffiliated individuals. Consequently, Debtors do not have sole control over the proceeds of the loan to be made pursuant to the commitment and cannot assure that those proceeds will be used to pay the Debtors' creditors. Additionally, contrary to the representation made by Debtor Leroy Foster, the proceeds will not in fact pay Debtors' creditors in full. Of the total amount of the loan commitment, only half (or $2.4 million) is available to purchase or refinance properties owned in whole or in part by Debtors and to satisfy liens on such properties. Those debts total at least $1.3 million, leaving only $1.1 million to satisfy $2.6 million in unsecured debt. Debtors have presented no proposal to the Court as to how the amount not needed to pay secured claims on the real estate will be distributed. Since the balance is not sufficient to pay all unsecured claims in full, it would appear that some creditors will be paid and others will not, thus preferring some of the Debtors' creditors over others, a result inconsistent with the Bankruptcy Code's policy of equality of distribution. *See In re Williams*, 305 B.R. 618, 620-21 (Bankr. D. Ct. 2004). Finally, nothing prohibits this transaction from being consummated if the case remains on file. The purchase of the property from Jackson has nothing whatsoever to do with the case. If Golf Hills wants to offer to purchase the interests of the estate in the other properties using the proceeds of the loan committed by Amstar, it may make that offer to the trustee who will then, subject to the supervision of the Court, channel the proceeds to those creditors of the Debtors who are entitled to them.

      There is no indication that dismissal would result in a delay in payment or that it would effect a reordering of priorities among the Debtors' creditors. All of the other factors, however, weigh against

dismissal.

The Debtors' most substantial creditor filed an objection to the request to dismiss. At the hearing, another of the Debtors' creditors and the United States Trustee expressed concerns about the conduct of Debtor Leroy Foster and opposition to the Motion.

While the Court does not find that the Debtors have acted in bad faith, serious questions have been raised about whether they have been forthcoming in required disclosures. At the Section 341 meeting, it apparently became obvious the schedules were not complete and accurate. The trustee specifically requested that certain additional information be provided and issued a notice of Rule 2004 examination of Debtor Leroy Foster to inquire further. Rather than provide the requested information, make the required amendments or appear for examination, Debtors filed a motion to dismiss the case.

Debtor Leroy Foster admitted under cross examination that "certain assets" were not listed on the schedules, claiming that they were overlooked and that he was in the process of working with counsel to correct the oversight. Counsel spoke up and assumed responsibility for the omission of a tract of real estate on Schedule A, advising the Court that his notes reflect that he was told about the property and noting that the debt secured by the property is scheduled. While the Court appreciates counsel's candor, it is Debtors' responsibility to review the schedules and insure they are complete and accurate, facts to which they attest by their signatures. *In re Bren*, 303 B.R. 610, 614-16 (8th Cir. B.A.P. 2003); *Turpen*, 244 B.R. at 435 ("dismissal of a case after it has appeared that the debtors failed to account honestly for their assets should not be permitted because such a failure indicates the likelihood of further questionable practices to the detriment of creditors.")

There is no other proceeding pending which would permit administration of the proceeds of the

loan commitment or insure payment to the Debtors' creditors.  As noted above, there is no assurance that if the transactions described in the testimony take place, the proceeds will be distributed to Debtors' creditors in an orderly and equitable manner, if at all.

While there are no pending objections to exemptions or to discharge, the Court notes that the trustee, the U.S. Trustee and no fewer than four creditors have sought and obtained extensions of the deadline for filing complaints objecting to discharge or to determine the dischargeability of debts.  The Court makes no assumptions about whether any such complaints will be filed and obviously makes no judgment about the merits of any such potential claims.  However, the unusual amount of activity by creditors in preserving their rights to object to discharge in conjunction with the other evidence and concerns expressed at the hearing suggests the existence of serious questions warranting the retention of the case.

For all the foregoing reasons, the Court sustains Woodward's objection to Debtors' Motion to Dismiss and denies the Motion.  A separate order will be entered in accordance with Rule 9021.

/s/ Dennis R. Dow
Bankruptcy Judge

Date: November 2, 2004

Copies to:

Charles F. Johnson
Bonnie L. Clair
Noel Magee
John C. Reed
Sherri L. Wattenbarger